Mr. Bravo's conviction should be reversed for two reasons. First, Mr. Bravo's underlying removal order is invalid because the court's recent decision in Riavaca shows that non-citizens in expedited removal proceedings with similar equities have a plausible claim to relief. Second, the district court erred at trial by allowing the government to Mr. Bravo-Rosas Pardon me, counsel. I read the decision of the district court judge. He was very careful in going after each one of those elements as to the discretionary exercise of withdrawal of the application. Do we review that determination for abuse of discretion or de novo? I think that's an excellent question, Your Honor. I think it's a question that I'm not sure this court has answered, and it's made more difficult by the fact that we're not really sure whether it's the district court that's making the discretionary decision or whether it's the district court saying this is what an immigration agent would have done. As I understand the law, he has to present some plausible evidence to the immigration officer that would activate the immigration officer's discretion to allow him to withdraw his application for admission, right? Actually, I would disagree with that slightly, Your Honor, because I think plausibility only comes in on review. Plausibility is not the evidence he would have to present to an immigration officer. It's how we review whether it is likely or not that an immigration agent would have granted it. That may be a slight distinction from what you're saying, but I just wanted to clarify. Well, the district court found it was not likely that the immigration officer would have granted this withdrawal of application, and therefore that Mr. Barbarossas had not suffered any prejudice, so we don't have to get to the issue about whether his due process rights are violated. So what was wrong with that decision? What's wrong with it is that there's no meaningful distinction between that case and Riavaca. And in Riavaca, this court said that a person with almost identical equities, someone who had lived in the United States for a long time, someone who had multiple United States citizen children, someone who had not committed fraud, someone who had shown statistics, who had shown another case, there's just simply no meaningful distinction between Riavaca where plausibility was found in that case. But didn't Riavaca, in Riavaca, the petitioner had entered the U.S. six times. Correct. And Riavaca said that was a serious count against the plausibility of withdrawal. And here, the defendant has entered over 20 times, so three times as many times as in Riavaca. So why does that make the district court's decision on prejudice unsound? I mean, why isn't that alone enough to kick this out of Riavaca? Because it's not enough because I think the issue is would the difference between six times and 20 plus times have taken it from plausible to not plausible. And I think the reason it wouldn't is because we know that on over 20 occasions, Mr. Bravo was not put into expedited removal proceedings. He was allowed to return. So what is it that makes it plausible on the 23rd time and not plausible on the 24th time? There's nothing. And that's why in the absence of some other extreme difference between these two cases, there's nothing between Riavaca and Bravo that makes that factor enough to fall below what the Supreme Court has found is a remote standard. Riavaca also said that the defendant had a path to legal citizenship, right? Yes. And I don't see that in this case. Your Honor, Mr. Bravo had several United States citizen children. He would have been able eventually to do a petition through those children. And so there's no need for this. He had a path to legal citizenship here? He did. Does Bravo Rosas claim that he was not told that in the expedited removal proceeding he was subject to removal? Yes. And that's the due process violation that we don't believe the court needs to reach here because we don't believe the district court reached it below. But we believe that even if it did, Riavaca controls that issue as well. So you would want to remand the district court to determine whether there was indeed a due process violation? I don't think it's necessary because Riavaca dealt with the exact same issue, and there Riavaca found a due process violation. So I don't think it's necessary to remand. But I'm not necessarily opposed to it if the court would see that. With the court's permission, I'd like to move on to the trial issues, if that's possible. I just want to follow up on the due process. So why can't we just decide the due process issue if for some reason we want to reach it? I mean, as I understand it, one of his complaints is he wasn't advised of the possibility of withdrawing his application, but he has no right to that under our precedent. He has no right to be advised. Riavaca said that's an open question. No, no, no, Riavaca didn't say it was an open question. He said we do not reach that issue. That's right. That's correct. It's quite different. I apologize, Your Honor. That's correct. And what about the – so he didn't – I guess his signature is missing on an I-860 form? There are two signatures that are missing. And in Ramos – Why is that a due process violation? Because it's in the regulations that it has to be – that he has to sign both of those things. And this Court has said in Ramos that if an expedited removal doesn't comply with the regulation that serves a benefit to the noncitizen, it's a due process violation. So on those grounds. Is that the same for the lack of the signature on the sworn statement? Correct. Okay. So we believe that there are clearly due process violations if – and the Court can reach it if it chooses. But we can reach that without necessarily remanding. That's correct. I'd like to move on to the trial issues. First of all, there are three trial issues that we've identified here. First of all, there was the issue that Agent Valdez should not have been allowed to testify and recall. Then there's the issue that the district court misinstructed the jury on the issue of official restraint. And third, there's the issue that the prosecutor's comments were improper because the prosecutor said that he was hiding in that brush because he was a convicted felon. And by doing so, the prosecutor essentially took the fact of Mr. Bravo's felony and used it for purposes far outside of the scope of impeachment, which is the only reason that it was allowed to come in. Let me ask you about that last one. Do I understand correctly that during closing argument, defense counsel made a number of objections during the argument? That's correct. But not to this one. This was objected to after the argument was concluded? It was objected to after the argument. It was the comment was made at the very end of the prosecutor's rebuttal argument, and defense counsel didn't believe that it would be appropriate to interrupt right at that moment. Well, I mean, he wasn't squeamish earlier on. He wasn't squeamish earlier. We believe it's preserved. Even if the court doesn't believe that it was preserved, the district court said it was preserved. And so in a… Well, in the district, it's either preserved or it's not preserved. It's not what the judge says, but… We believe it's preserved. Let me ask you about the witness who was allowed to testify despite the rule being invoked. Yes, Your Honor. My understanding of the rule is that the district judge has discretion to make exceptions and to permit it when he or she thinks justice requires it. Why was it an abuse of discretion here? Because, first of all, the district court granted the motion saying that the witnesses will be excluded. Now, at that point, if, for instance… I didn't make my question clear. Oh, sorry. Obviously, the witnesses were excluded, but the judge can say, even though you should have been excluded but you weren't excluded, I have the discretion to permit you to testify anyway because justice requires it. Why was that an abuse of discretion? Well, because the court has said that it's a very, very high standard. If, for instance, you have a situation where someone is supposed to be excluded and they're not, for purposes of, for instance, harmless error, the court has said that there is a very high standard that must be met to show that this did not somehow prejudice the jury. Prejudice the jury? I'm sorry. So that this didn't come in and be an issue. Well, what is the issue? I'm not following. You know, I do trials all the time. I don't understand what the prejudice is from having a witness who accidentally gets through. And it was an accident because it wasn't anticipated he was going to be called back, right? This was a surprise development. So what is the problem with the fact that he heard a couple hours of testimony? I mean, why is that a reversible error? Because on remand, when he came back on recall, he tailored his testimony to Mr. Bravo's testimony. One of the things that he specifically said is that when he first testified, he said, I apprehended Mr. Bravo at 6 p.m., right at sundown. Then when he testified on recall, he said the sun had gone down about an hour before. Now, the reason that that's relevant is because one of the big issues was, did the cameras see Mr. Bravo? If it was light out, the cameras could see Mr. Bravo. If it wasn't light out, then the cameras couldn't. So, in other words, that went directly to the jury. Well, that's a fine closing argument to impeach a witness. I'm sorry? That's a fine closing argument to impeach the witness, that he was inconsistent. Correct. So what's the problem? I still don't get what the problem is with having him. He heard a few hours of testimony, and then he was unexpectedly called back to the stand. I mean, I just, I'm not seeing how that causes this to be thrown out on that basis. Well, you also, I think it's very important to look at the fact that because he was allowed to come back, he was allowed to leave the jury with the last evidence that the jury heard is Agent Valdez repeating his testimony. I didn't find, I found him in a brush. And this whole case came down to an issue of credibility between Agent Valdez and Mr. Bravo. Basically, what happened was Agent Valdez was allowed to testify twice, and he was allowed to testify again after Mr. Bravo testified, right before the jury went in, and rebut Mr. Bravo's statement. That gave him an unfair advantage. But that's different. You're complaining about the fact that he sat through testimony and was recalled. What you're describing now sounds like a different issue, which is he shouldn't have been allowed to testify for a second or third time. Your only issue is he stayed in the courtroom. And I just, you can move on, but I'm just not sold on the idea that simply being in the courtroom for a few extra hours necessarily made it impossible for the jury to reach a verdict. Or that we should throw this verdict out. I'm not saying it made it impossible. I'm saying it prejudiced Mr. Bravo because basically it gave the government a significant advantage. But I will move on to the issue of, I would like to move on to the issue of the prosecutor's closing argument. Now, the fact of Mr. Bravo's prior felony was admitted for the purposes only of impeachment. And then during the prosecutor's rebuttal argument, the prosecutor stated, Mr. Bravo was hiding in that brush because he was a convicted felon. That's far outside of the scope of what is allowed for impeachment purposes. You're using it for motive. You're basically saying he's a bad guy. He's been convicted in the past. You should convict him again. And frankly, I just don't see how that's not error. And it was during the rebuttal argument, so we had no way of going back. And unlike as the government has stated, the judge, the district court, had instructed the jury prior to closing arguments. So there was no instruction to cure this. More specifically, tell me about how the objection to this was made. The argument was over. And what happened? When was the objection made? After the jury was deliberating? The objection was made. The jury left. And then the defense counsel said, Your Honor, I didn't want to interrupt. Jury left to start deliberations? Exactly. Okay, but boy, by that time, it's too late to instruct them anymore. I guess you could bring it back. But you didn't ask for that. We objected. And the district court said, first of all, the district court didn't even sustain the objection. And then the district court said it's preserved. So I think it would have been futile even if we had made it. Well, it would have been nice if the objection were made when he said the statement. The judge could say, Disregard the statement, or I admonish you that you can't take that into account, or whatever the judge would say. I agree. If you don't get around to objecting to it until after they're deliberating, there's not much the judge can do about it. I agree. In an ideal world, it would be a waste of place. I mean, it's a little late to pop up after the jury's gone back to the jury room and say, Oh, I have the following ten objections to closing argument. I mean, how is that supposed to be workable? Well, all the more reason that it shouldn't have been allowed in the first place. And frankly, you know, we objected multiple times earlier. None of our objections were sustained. Obviously, it would have been ideal if we had objected right at that moment. It's not only ideal. I mean, it's required, isn't it? It is required. I think this, even if the court finds that it's plain error, and we believe that it was harmless, or I'm sorry, we believe that it should be judged under a harmless error standard. But even if the court finds that it's plain, this is about as plain as it gets. Frankly, I don't see any way that this was used for impeachment. And with the court's permission, I'll say the reminder of my time. Thank you, Ms. Hertz. Good morning. Good morning, Your Honor. Matthew Sutton on behalf of the United States. Let me start by addressing the 1326C motion here. And I think this court is correct to start with Raya Vaca and to analyze how this case and how Mr. Bravo-Rosas' unique factual circumstances are quite different from the circumstances in Raya Vaca. And I'll highlight two of the factors from the immigration field manual that were particularly important to the district court. And let me start before I do that. Let me answer Judge Bea's question that I believe the district court's findings of fact and her careful analysis of the discretionary decision here are reviewed for clear error. I think that's clear from the Camacho-Lopez case. That's, again, reiterated in the Raya Vaca case. I think these findings of fact are reviewed for clear error. And the district court found these 24 apprehensions were a significant and controlling factor in this case. Mr. Bravo-Rosas had a history of making illegal reentry into the United States. This was over a 10-year period, very different from the six removals or the six reentries in the Raya Vaca case. We're talking about an order of magnitude greater, I mean almost three times as many illegal reentries. I think the district court was correct in making that factual finding that that fact alone is a major factor in showing how this relief here was not plausible. Well, the judge wasn't able to compare this case to Raya Vaca because Raya Vaca wasn't around yet. That's correct, Your Honor. Raya Vaca was actually in litigation in the district court at the time Mr. Bravo-Rosas' case. Why shouldn't we remain in saying, Judge, now we have a new decision that deals with quite a pertinent issue. If you follow it, distinguish it, whatever you want to do, but reevaluate it in light of Raya Vaca. I think remand is not necessary in this case because of those clear findings of fact that the district court made. And I think with the way that the panel addressed Raya Vaca is, you know, there's a clear difference here. And this court can make that distinction at the appellate level because the facts here are undisputed. Mr. Bravo-Rosas had these 24 prior apprehensions over a 10-year period. This is someone who is a frequent flyer in the immigration context. It's not plausible that at this late juncture when the decision has been made to place Mr. Bravo-Rosas. Excuse me, Your Honor. But that same argument was made in Raya's Vaca. Raya Vaca, and Judge Murguia said that it proves that Raya Vaca could expect to have the application for withdrawal of admission given to him because it happened six times before. If it happened six times before, Raya Vaca has a reasonable expectation of discretionary relief. If it happened 24 times before, Bravo-Rosas would have even more of an expectation, wouldn't it? Well, let me be exactly clear about the nature. And I think there's a little bit of confusion. Those 24 prior removals were not removals that started as Mr. Bravo-Rosas was placed into formal removal proceedings. So I think it's inaccurate to say that he was given the relief that he sought here, which is withdrawing his application for admission. That circumstance would only have occurred once Mr. Bravo-Rosas was placed into formal proceedings. These prior removals indicate that the Immigration Service had not made that decision yet to place Mr. Bravo-Rosas into these formal proceedings. So I don't think you can take that discretionary decision from the Immigration Service whether or not to pursue the immigration, the formal immigration proceedings here as evidence that once the proceedings have commenced, once the Immigration Service has decided that 24 entries is too much, and as you go through his sworn statement on SCR 84, you can see Mr. Bravo-Rosas tells the officer that he has been arrested seven times by Border Patrol. His last reentry was only four days prior on May 1st. So these are the factors that I think indicate in this specific unique factual circumstance, once the decision has been made to place him in the removal proceedings, it's not plausible that the Immigration Service would have exercised its discretion. Do we have anybody, of course you didn't have that case on the books yet, but is there any showing that people who are like Mr. Bravo-Rosas don't get further consideration anymore by the service? How is the judge supposed to noodle that out? So, Your Honor, I think the court in this case applied Barajas-Alvarado, and that's kind of the critical case here. And applying all of those factors, the same analysis that the court utilized in Rehavaca, you know, Barajas, the court there said decisions about other aliens and perhaps they would have gotten removal if there's no evidence to show why this specific alien or these classes of aliens would get relief, it's of no consequence. This is a discretionary decision. Of course the United States would concede that there's no categorical bar for the defendant being offered this relief. How is the judge supposed to know what's plausible and what isn't? So what this court has instructed, it started in 2011 with examining the factors in the immigration field manual. Go through those six factors, make your findings of fact, and then evaluate the plausibility of relief. You do that under Barajas, you lose, because in Barajas he had come in with falsified documents, which the defendant here did not do. In Barajas he had no sort of humanitarian argument, which the defendant here does have. So, I mean, those two alone cut heavily against the application of Barajas in favor of the government. I think, Your Honor, that is an unduly limited reading of Barajas. Certainly it is accurate to say that in Barajas there was a question of fraudulent documents. That is not the case here. But that is to elevate one sentence in the immigration field manual. You said there's six factors. I've identified two that count against you. So one-third of the factors are already a strike against the government, and then others are arguable. Well, let me, Your Honor, to be fair, the use of false documents is not one of the six factors in the immigration field manual. That's an alternative concern that the field manual has addressed. The six factors in the immigration field manual, the judge in this case, I think similarly in Barajas, Alvarado, and in Ray Ivaca found that five of the six factors weigh against the defendant. The only factor here that cuts in his favor is there have been no previous findings of inadmissibility against Mr. Bravo Rosa. So I think in any way this court can analyze it, if the government is able to show that relief is not indicated by five out of six factors, I think the immigration service is, I think it's accurate to say that that relief was not plausible. And I want to talk about ground number four, the ability to overcome, to easily overcome the ground of admissibility. I think we need to be entirely accurate here about another distinguishing factor with Ray Ivaca. Ray Ivaca had a U.S. citizen spouse and U.S. citizen parents. I think the court in Ray Ivaca indicated those would be some of the pathways for Mr. Ray Ivaca to receive United States citizenship. In this case, again, there's a critical difference. Mr. Bravo Rosa only has United States citizen children. His parents are a Mexican citizen and his spouse, who's living in the United States, is also a Mexican citizen and does not have any status to be here. His children can only petition for Mr. Bravo Rosa to obtain legal permanent residence status once they turn 21. There's no indication in the record here that they're even close to that. And I think the indication and the facts in the record indicate they're actually much younger. So to say that – How old are they? Do we know how old they are? I don't know, Your Honor, but I – We don't know if they're, what, 19 or 19 months or 19 years. We don't know. That's correct, Your Honor. There's no evidence in the record for that. Isn't that another reason we ought to remand it, to let the judge make those, you know, findings? I don't think remand is necessary in this case, Your Honor. The defense has – I mean, you've just told us that he's got older – you know, he's got younger children, but you really don't know if they are or not. Well, there's certainly no indication that they are over 21. So they are certainly not in a position right now to position for Mr. Bravo Rosa to achieve citizenship. So certainly, I don't know if it really makes a factual difference whether they're 18 years old or they're 10 years old. I mean, at the time in 2011, they were not over the age of 21. They were not able to petition for their father to receive any kind of status. I wonder if I could ask you about the prosecutor's closing argument. Certainly, Your Honor. And let me start by addressing our office has reviewed this argument, particularly the 609 reference, and I would submit to the court that at this point, the United States believes that reference was improper. On the other hand, even though that this one limited phrase in the prosecutor's rebuttal closing argument was improper, I would submit that it's not reversible error. And I think you have to start with what is the standard of review here. And I think this court has indicated this was a defense counsel who had no problem objecting multiple times during the original closing argument and the rebuttal closing argument. And if you examine the record of how those closing arguments are conducted, the district court routinely in response to the objections would remind the jury that the statements of counsel are not evidence and that their understanding of the evidence will control that, you know, counsel statements are not evidence. So there is a curative function that the district court could have exercised if the defense counsel had timely objected to this statement. Let's agree that defense counsel was asleep at the switch, didn't object while the jury was still in the box, and could have been admonished by the judge. Okay. They hadn't reached their verdict yet, right? That's correct, Your Honor. Any reason they couldn't have been brought back into the courtroom? No, Your Honor. But I think, again, and I think this would go to any potential prejudice that the defense suffers, I don't know if the defense at this point would have wanted to bring even more attention to this statement. And I think that's a tactical choice that perhaps they would not have elected to at that point. This was a … They did object after the jury went out. They did object, Your Honor. What was the objection? They objected to the use of the prior felony conviction. And the prosecutor's clarification in response to the district court's question about this, I think, is entirely instructive about what was the purpose of that phrase. And you cannot examine that phrase in isolation. You have to examine that phrase in the entire context of the rebuttal argument. And we reproduced the two paragraphs preceding that statement, and they clearly show the defense is right. This is a credibility contest between the apprehending agent, Agent Valdez, and the defendant who took the stand and was properly impeached with his felony conviction. The prosecutor went through all of the improbabilities in the defendant's statement about what he testified to on direct, about how he spotted a Border Patrol truck with what he believed was a camera on it over three miles from his location, proceeded to climb over the fence, and then wait patiently for that Border Patrol truck to arrive. The testimony from Agent Valdez on direct and the testimony on rebuttal entirely disagrees with all of those premises. And so I think it's entirely proper for the prosecutor to make that comparison. Which of these stories is more credible? That's not the statement that she's complaining about. That's correct, Your Honor, but it's necessary to understand that context. And the overall context, and I'll get right to the point, is the prosecutor is in essence saying the defendant's felony conviction is yet another reason why his statement, his story about how he attempted to enter the United States is not credible. That's a shorthand way to do that, and you can understand from the nature of the preceding two paragraphs how that was made perfectly clear to the jury. So while that phrase was inartful, they should not have said because, because I think that unduly leads to some other potential suggestions, it's cured by the fact that this is plain error standard review here, the objection was untimely, and viewed in the entire context of the closing argument, it's clear what the prosecutor was arguing. There's no dispute here. This was in fact, as the defense said, a credibility contest. It's entirely proper to mention all of the factors that come to bear on credibility. And let me turn for a second to the sequestration argument, and I think this court has hit on some of the essential points here, that this is a review for abuse of discretion. There was an inadvertent violation of the sequestration order. That's clear from the record, that there was no bad faith on behalf of the government, and in fact the parties, with the exception of the defense counsel, were unaware that this witness was in the courtroom during the defendant's testimony. The reason that the district court properly exercises discretion in allowing this brief rebuttal testimony, is the district court went through the process of examining, number one, that there was no bad faith in the government from this witness inadvertently remaining in the courtroom after being properly excused, that the government had proffered a very limited basis of the testimony, the proposed rebuttal testimony, and then the district court allowed the defense to cross-examine Mr. Valdez, Agent Valdez, about these issues. You said the defense lawyers knew the agent was in the courtroom and didn't say anything until he was called up again? Your Honor, the record shows that it was only the defense counsel who indicated that, and I can turn exactly to that record site, it's on page 125 of the record, that Agent Valdez was in the courtroom the entire time. I don't think there's any way that statement can be justified. So what? What does he care if he's in the courtroom? He's entitled to think he's not going to be recalled. Well, I think what the… And he clearly didn't care because he didn't say anything. I mean, he knew that the agent was there and he had no problem with it. Exactly, and I think the issue with these prior cases dealing with these issues, indicate that the timeliness of the objection is critical because at that point the district court could have cured any potential issue that the defense had. To allow the defense to sit back and, you know, as the district court indicated during another passage of the record, this seemed to be a trial by ambush. The defense theory was not even made aware to the government until a sidebar during the defendant's testimony. So this is a trial that appeared to proceed by way of ambush, and I would suggest, Your Honor, the record shows that that's perhaps another motivation of the defense here in failing to timely object when they first noticed the witness in the courtroom. If that's the case, if that's what their, you know, statement of the record is, they should have objected at that point. It would have allowed the district court to do that. Thank you. Thank you, Your Honor. Ms. Hartzler. The government's trying to shift the burden to us. We had no burden whatsoever to try to say that Agent Valdez should not be in the courtroom, and the reason is we knew we weren't going to recall him, and so at that point Agent Valdez had a Sixth Amendment right to be in the courtroom like everyone else. So because we weren't going to recall him, we had no legal basis to object to him being in the courtroom whatsoever. I'd also just like to read a quote from United States v. L., and this goes to the issue of prejudice on the sequestration order. The standard that the government has to meet is that it's very high because prejudice is presumed and reversal is required unless it is manifestly clear from the record that the error was harmless. In other words, this falls on the government to prove it's harmless. They haven't done that. I'd like to move on to just correct the government's statement in regards to Riavaca versus the case here and in terms of whether there was a possibility of getting legal status in the future. Now, the government actually, I think, misstates the facts in Riavaca. In Riavaca, the person did not have a United States citizen spouse. He had a United States citizen partner. They were not yet married. He also did not have United States citizen parents. He had a United States citizen brother. So there's really no difference, no meaningful distinction in terms of the ability to get legal status in the future between Riavaca and Mr. Bravo. I'd also like to go back to the issue of prejudice on closing argument. We absolutely would have asked the judge to bring the jury back out, and I think that— You would have. We would have. But didn't. We did not. Well, at that point, our objection was overruled. I mean, we objected. And we said this was improper. Well, whatever. I mean, you didn't say to the judge, Judge, we object, and you should please bring him back and admonish him. I don't know what you would have, maybe, if you mean you would have the next time this happens. But, I mean, in this case, there was never any request for any of that. Well, I think we also go to the issue of would it have been futile. I mean, the district court clearly overruled our objection. So even if we had asked for that— Well, that's what making the record is all about, you know. I see you're out of time. So thank you very much. Thank you, Your Honor. Mr. Sutton, thank you to the case to start. You just submitted. Thank you, Your Honor.
judges: Donato, Silverman, Bea